The next case this morning is 520-285 People v. Perry. Arguing for the defendant appellant is Erica Mayle. Arguing for the state appellee is Max Miller. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning to you both. Mayle, you're for the defendant. Are you ready to proceed? Yes, your honor. Okay, you may do so. Good morning and may it please the court. My name is Erica Mayle from the Office of the State Appellate Defender. Ernest Perry has made a prima facie showing of cause and prejudice that his mandatory life without parole sentence violates the proportionate penalties clause as applied to him. Perry, who has an IQ of 45, was convicted of an offense when he was just 20 years old, and the jury's verdicts demonstrate he was convicted on a theory of accountability. The sentencing court imposed a mandatory life sentence without any consideration of his intellectual disability or his youth, and Perry was sentenced before intellectual disability was considered mitigating in Illinois. Because Perry has shown both cause and prejudice, his successive petition should be remanded for second stage post-conviction proceedings. Perry has established cause to raise this claim because since his sentencing, the law has changed significantly regarding sentencing of both young adults and the intellectually disabled, and Illinois courts now recognize that a mandatory life sentence from the multiple murder statute can be unconstitutional as applied to a particular defendant. At the time of Perry's sentencing in 1988, the mitigating factors listed in the recognition of intellectual disability, the factor of reduced mental capacity was added in 2003, long after his sentencing and initial petition, and intellectual disability was not one of the statutory mitigating factors in the standard list of mitigating factors. It wasn't until 2002 that the U.S. Supreme Court recognized the diminished culpability of intellectually disabled defendants in Atkins v. Virginia. The law regarding sentencing of young people, specifically juveniles, has changed significantly after the U.S. Supreme Court case Miller v. Alabama, and in Illinois cases like Leon Miller, People v. Buffer, have changed juvenile sentencing as well. In 2015, the Illinois might be able to challenge life sentences on the grounds that they violated the proportionate penalties clause that was in People v. Thompson. What about the recent Illinois Supreme Court case of People v. Moore? Yes, so People v. Moore and People v. Clark have recently come out regarding cause to raise proportionate penalties claims, and while they do address cause to raise proportion penalty claims, they don't address the issues raised by Perry's case. So, in Moore, both defendants were 19 years old and received life sentences, but the Illinois Supreme Court found that both of those defendants had received sentencing hearings that focused on the defendant's youth, and where all parties recognized that youth was mitigating. One of those was discretionary, one of those, while there were two victims, the sentencing hearing proceeded like it was a discretionary life sentence, and the court sentenced, I'm sorry, I can't figure out if it's Moore or Williams, but sentenced that defendant on the grounds that the murder had accompanied by brutal and heinous conduct. Both of these sentencings considered youth as mitigating, and the Supreme Court found that all the parties knew that, whereas Perry, he had a mandatory life sentence, and his sentencing couldn't recognize that special status of young adults or meaningfully consider any mitigating factor, and the court, the sentencing court for Perry reasoned that the life in prison was the only available sentence. So, Perry's in a different circumstance than the defendants in Moore because his sentencing couldn't meaningfully consider his youth. People versus Clark, the other recent Illinois Supreme Court case regarding cause to raise a proportionate penalties claim, did involve an emerging adult who was 24 and had an IQ of 79. He received an aggregate sentence of 105 years, and the claim in that petition was that the sentencing court failed to give sufficient weight to the mitigating effect of his age and intellectual disability. His sentencing focused on his intellectual disability and included expert testimony because at that point, intellectual disability was a statutory mitigating factor, and the court had the discretion to determine a term of years sentence, but, and the Illinois Supreme Court there found there was no cause to raise a claim that the court hadn't sufficiently considered the intellectual disability and age in mitigation, but Perry had a mandatory life without parole sentence. He couldn't raise his intellectual disability because it wasn't considered mitigating at that point, and the court couldn't have even Miller versus Alabama did not change the cause analysis that allows defendants to bring successive post-conviction conditions under the proportionate penalties clause. So, I think the, in, sorry, in Moore, is that what you were asking? Yes. The, is that too broadly? I think that is too broad a reading of Moore. I think those cases, again, there wasn't cause because Illinois has, has recognized the status and their, has recognized the status of young people and their sentencings complied with that consideration given. Perry had a sentencing where his youth couldn't be meaningfully considered in any way. In addition, People versus Leon Miller was decided 10 years after Perry's initial petition, and that was the first time that the mandatory life without parole sentence from the multiple murder statute was found unconstitutional as applied to a particular defendant based on that defendant's age and role in the offense. The, the law regarding youth intellectual disability and as applied proportionate penalties changes has changed since Perry's sentencing and initial petition, and this does give him cause, unlike some of the defendants in the recent Illinois Supreme Court cases. Clark includes language that Illinois has long recognized the reduced culpability of defendants with intellectual disabilities, that that was prior to cases like Atkins versus Virginia, but Perry's sentencing occurred prior to that recognition. Again, Clark had a sentencing where he could present expert testimony and where the court could consider it because it was a term of year sentence and the court had the discretion. Perry didn't receive that. The law has changed and he's shown cause to raise this. Now regarding prejudice, he has made, again, a prima facie showing of prejudice. He received what is now the harshest sentence in Illinois without any consideration of the mitigating effects of his youth, his intellectual disability, or his role in the offense. His IQ was 45, that's moderate intellectual disability, and he was only 20 at the time of the offense, still well within the time that we now recognize that brains are still maturing. Some of those hallmark characteristics of youth, like impulsiveness, failure to appreciate consequences, and susceptibility to peer pressure, I think you can see that in the offense. Just a few minutes before the offense occurred, Perry agreed to be a lookout while his sister's boyfriend, Thurman Smith, stole a television, and I think this shows the impulsiveness, the susceptibility to peer pressure, and that inability to appreciate consequences. He had a limited role in the offense, which is also mitigating. He was a lookout, and he was likely convicted on a theory of accountability. The jury only got a general verdict form, and it heard evidence from a jailhouse informant that Perry had a larger role, but it found Perry ineligible for the death penalty, and had Perry killed one of the victims or personally inflicted injuries, the jury would have found him eligible for the death penalty, but it didn't. So the sentencing court, again, didn't have discretion to consider his youth, his intellectual disability, or his role in the offense, and the Illinois Supreme Court's decision in Clark recognizes that the constitutional error of mandatory sentence occurs because a court can't consider factors in mitigation. Then I just want to highlight that the case is similar to being convicted of accountability, agreeing to participate as a lookout just a few minutes before the offense. This is significantly different than this court's decision in People v. White, where the court identified that the sentence, that the offense there was not at all like People v. Leon Miller, and that that defendant hadn't shown any specific reason he was more like a juvenile. Here, Perry has. All right. For now, I'm going to stop you there. You'll have a few minutes after Mr. Miller argues for the state. Mr. Miller, are you ready? Yes, Your Honor. Okay, go ahead. May it please the court, counsel, my name is Max Miller, and I represent the people of the state of Illinois. As this court's aware, it's the defendant's burden to establish cause and prejudice in this case. The state's argument is pretty straightforward. The state does believe, just in reference to your question to the defendant, that more is dispositive on the issue of cause, that that's not too broad of a reading, but the state would like to focus on prejudice for three primary reasons. The first is that this court's decision in People v. White draws a clear line of demarcation between 18-year-olds as adults. This defendant was 20, so the Miller v. Alabama factors simply do not apply to the defendant here. Now, defendant tries to salvage this by saying, well, the defendant was also suffering from an intellectual disability, but as the trial court noted in its denial of this leave to file successive petition, that People v. Cody, the Supreme Court held a natural life sentence, actual or de facto, does not violate the proportionate penalties clause as applied to an intellectually disabled adult. So there's really no reason that this court should consider the Miller v. Alabama factors or the disability on its fate. And as the defendant pointed out in its reply brief, the trial court was issuing a mandatory sentence. Now, as this court held in White, a mandatory sentence of life without parole for defendants who commit multiple murders can be validly applied to adults, and the sentence, mandatory sentence on an individual. So the state's position is that the fact that he could not consider the youth in this mandatory sentence precludes the possibility of prejudice. There was no possibility of prejudice because the trial court imposed the only lawful sentence it could to the circumstances of the murder. Now, defendant says that it has these documents, you know, that have existed for 30 years, and they say that the law has changed, which is true, but these documents provide that the defendant had a low IQ. The state goes to great lengths in its brief to describe the procedural record of this case, but it's almost belied by the record to say that the defendant was intellectually disabled to the point that he was unable to, you know, conduct himself in these filings. But it's irrelevant because that is not, under People v. Cody, sufficient to make this unconstitutional under the Proportionate Penalties Clause. And so, really, the state is just under the opinion that because it can't show prejudice, that that's sufficient for this court. But especially with the addition of Moore, which was issued, obviously, after the filing of the briefs, that cause is also proven. But, again, the state would rely on its cases that it cited in its brief and thinks that conclusions from Moore just simply assert the conclusions this court has already had in People v. White, and that our Supreme Court has already shown the trend to be with People v. Cody. And the state would be willing to answer any questions. But other than that, the state would rely on its brief for its argument. All right. Justice Lutz? No questions. Justice McHugh? No questions. All right. Thank you, Mr. Miller. Thank you, Your Honors. Brevity. Ms. Mayo, for the defendant? Thank you. I do want to address Cody. In that case, the Illinois Supreme Court upheld an as-applied challenge to an intellectually disabled defendant's mandatory life sentence, but it also identified the specific factors to consider in assessing a sentence, which include culpability, future dangerousness, and rehabilitative potential. Cody was a 46-year-old defendant who had committed multiple sex offenses against children, and the Supreme Court identified the difficulty of rehabilitating sex offenders as contributing to his future dangerousness, also the fact that it was a second offense. In that case, the defendant's age, intellectual disability, and particular crime all demonstrated future dangerousness and lessened rehabilitative potential. So the court found that a mandatory life without parole sentence didn't violate the proportionate penalties clause as applied to that defendant. But Perry hasn't had the opportunity to demonstrate how his intellectual disability affected his participation in the offense and whether or not it merely delayed his maturation. He should have the opportunity to develop his claim. We've identified that intellectual disability reduces a defendant's culpability, and now he should have an opportunity to demonstrate what his rehabilitative potential and what the future dangerousness would be. This court's decision in People v. White, again, this court identified that there was no specific intellectual disability or cognitive developmental impairment that would justify considering that defendant more like a juvenile. Perry has an IQ of 45. And then the court analyzed the factors in Leon Miller and found that that combined with the violence and his status as an adult made the sentence constitutional as applied to that defendant. Perry was sentenced in 1988 and filed his initial post-conviction in 1992. It would be impossible to expect Perry to have supplied the sentencing court with evidence of intellectual disability when it wasn't recognized as a mitigating factor and where the sentencing court could only consider life the only available sentence. Any presentation of his youth or what his brain development was like at the time would also have been futile. The state mentioned that because it's mandated that it's a permissible sentence, People v. Leon Miller found such a sentence unconstitutional as applied to that defendant. And Perry's made that prima facie showing that he has cause and prejudice that a life sentence without any opportunity for release for an intellectually disabled 20-year-old who agreed to be a lookout for burglary is unconstitutional as applied to him. All right, does that complete your argument? Yes. All right, Justice Welch? No question. Justice McKinley? No questions. All right, thank you both for your arguments here today. This matter will be taken under advisement and an order will issue in due course.